SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## State v. Robert J. Stein (074466) (A-26-14)

**Argued February 1, 2016 – Decided July 19, 2016**

**ALBIN, J., writing for a unanimous Court.**

In this appeal from defendant's conviction for driving while intoxicated (DWI) and careless driving, the Court considers the obligations of a municipal prosecutor under Rule 7:7-7(b), which governs discovery in municipal court proceedings.

Defendant Robert Stein was charged with DWI and careless driving after a motor vehicle accident in Wayne Township. The responding officers observed that defendant's eyes were bloodshot and watery, his speech was slurred, his breath smelled of alcohol, and, as he walked, he swayed and grasped for support. Defendant also failed the field sobriety tests. Defendant claimed that, while performing the sobriety tests, he was suffering the effects of the crash of his vehicle and deployment of the air bags, which hit him squarely in the face. The two breath samples that defendant gave during a breathalyzer test revealed blood alcohol concentrations of 0.17 and 0.18 percent.

In pretrial discovery, defendant requested the names of the police officers who responded to the scene, including those from a neighboring township. The municipal prosecutor did not provide the names of the neighboring township's officers, and defendant did not raise the issue with the municipal court. Defendant also requested videotapes which may have recorded his appearance, behavior, and motor skills at the accident scene and police headquarters. The municipal prosecutor repeatedly stated, at a pretrial hearing and trial, that videotapes did not exist. Defendant disputed that contention, and continued to request the tapes. The record is unclear on whether videotapes existed when defendant requested them because that issue was neither presented to, nor determined by, the municipal court.

The municipal court found defendant guilty of DWI and careless driving. The court based its DWI finding on the breathalyzer readings and the officers' observations of defendant. The court sentenced defendant, as a third-time DWI offender, to incarceration for a term of 180 days in the county jail and loss of his license for a period of ten years. After a trial de novo on the record, the Law Division also convicted defendant of DWI and careless driving, based on the breathalyzer readings and, separately, on observational evidence. The court imposed the same sentence as did the municipal court. Additionally, the Law Division ruled that the municipal prosecutor was not required to provide discovery of the names of the neighboring police officers or the videotapes that defendant requested. The Appellate Division affirmed the motor-vehicle convictions and the Law Division's discovery rulings. This Court granted limited certification. 220 N.J. 97 (2014).

**HELD:** Under Rule 7:7-7(b), the municipal prosecutor was required to provide defendant with the names of the police officers from the adjacent jurisdiction who responded to the accident scene. Because, when the prosecutor failed to provide the information, defendant did not raise this issue before the municipal court, or seek relief under the Rule, the issue has been waived. The prosecutor was also required to provide the videotapes that defendant requested, if they existed, since such information was clearly relevant to a DWI defense. Because the Court cannot determine from the record whether any videotapes exist, the matter is remanded to the Law Division for further proceedings on this issue.

1. The resolution by the trial court of a discovery issue is entitled to substantial deference and will not be overturned absent an abuse of discretion. On appeal, a court need not defer to a discovery order that is based on a mistaken understanding of the applicable law. In reviewing the meaning of a court rule, this Court owes no deference to the interpretations of the trial court and the Appellate Division, unless they are persuasive in their reasoning. (pp. 12-13)

2. The discovery rules governing the municipal court and the Criminal Part of the Law Division are nearly identical, and both mandate the disclosure of the same categories of information. Broad discovery and the open-file approach apply in criminal cases to ensure fair and just trials. In light of the similarity between criminal and municipal court cases, the procedural protections afforded, and their discovery rules, the liberal approach to discovery in criminal cases is applicable in municipal court cases. Rule 7:7-7(b) provides that a defendant has a right to discovery of all relevant material in a municipal court case. The Rule sets forth eleven specific categories of information that a defendant is entitled to receive, on written request to the municipal prosecutor. (pp. 13-14)

3. Under Rule 7:7-7(b)(7), if the municipal prosecutor knows that police officers from an adjoining jurisdiction have relevant information pertaining to a DWI case, their names and addresses must be disclosed to the defendant. The Rule does not distinguish between individuals with relevant information who are located within the municipality having jurisdiction over the charges against a defendant, and those located outside the jurisdiction. (pp. 14-15)

4. Under Rule 7:7-7(b)(6), a municipal prosecutor is required to provide a defendant, upon his request, with relevant documentary evidence, including video and sound recordings and images if it is within the State's custody or control. A video or sound recording, such as a recording from a patrol car's dashboard camera, or a video recording of a breathalyzer test, or defendant's appearance, behavior and motor skills, including his performance of psychomotor physical or sobriety tests, is relevant to prove or disprove a DWI defendant's intoxication. The State may seek the redaction of a video recording, or an in camera review, if necessary, under appropriate circumstances and consistent with a defendant's fair-trial rights. To ensure the availability of such evidence, a defendant should give written notice to the municipal prosecutor to preserve pertinent videotapes. (pp. 15-18)

5. In this case, the municipal prosecutor had an obligation under Rule 7:7-7(b)(7) to provide defendant with the names of the police officers from the adjoining town of Pequannock who had responded to the accident scene, based on the two discovery letters that defense counsel sent to the municipal prosecutor. However, defendant did not seek to compel the prosecutor to comply with the State's disclosure obligations, as authorized by Rule 7:7-7(j). Because defendant did not raise or preserve the issue in municipal court, the Court declines to consider it on appeal. (pp. 18-21)

6. The two discovery letters that defendant's counsel sent to the municipal prosecutor requesting videotapes, or recordings made by a video-equipped police vehicle, of the accident scene and of defendant's appearance and performance of the sobriety tests, unquestionably sought relevant evidence. This Court disagrees with the determination of the courts below, and holds that the videotapes must be disclosed under Rule 7:7-7(b)(6), provided that such recordings existed at the time defendant sought the information. Such tapes would provide evidence relevant to defendant's sobriety and the officers' conclusion that defendant was under the influence. (pp. 21-22)

7. The Court remands this matter to the Law Division for further proceedings to determine whether any relevant video recordings ever existed, or were available when defendant made the discovery requests. Depending on the court's conclusions on remand regarding whether the tapes existed, the Law Division has wide latitude to fashion an appropriate remedy pursuant to Rule 7:7-7(j). (pp. 22-24)

The judgment of the Appellate Division is **AFFIRMED IN PART** and **REVERSED IN PART**, and the matter is **REMANDED** to the Law Division for further proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON and JUDGE CUFF (temporarily assigned), join in JUSTICE ALBIN's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

ROBERT J. STEIN,

    Defendant-Appellant.


        Argued February 1, 2016 – Decided July 19, 2016

        On certification to the Superior Court,
        Appellate Division.

        Kam S. Minhas argued the cause for appellant
        (Mr. Minhas, attorney; Mr. Minhas and
        William E. Reutelhuber, on the briefs).

        Marc A. Festa, Senior Assistant Prosecutor,
        argued the cause for respondent (Camelia M.
        Valdes, Passaic County Prosecutor,
        attorney).


    JUSTICE ALBIN delivered the opinion of the Court.

    This appeal involves the application of Rule 7:7-7, the

discovery rule in municipal court cases.

    Defendant Robert Stein was involved in a motor vehicle

accident in Wayne Township and charged with driving while

intoxicated (DWI) and careless driving. In pretrial discovery,

defendant requested the names of the police officers who

responded to the accident scene, including those from a

1

neighboring township.  The municipal prosecutor did not provide the names of the neighboring township's officers, and defendant did not raise the issue with the municipal court.  Defendant also requested videotapes, which may have recorded his appearance, behavior, and motor skills at the accident scene and police headquarters.  The municipal prosecutor repeatedly stated at a pretrial hearing and trial that such videotapes did not exist, but defendant apparently did not accept those representations.  The record is not clear on whether such videotapes existed at the time of the discovery request because that issue was never clearly presented to the municipal court.  Therefore, no definitive ruling was made on that issue.

The municipal court found defendant guilty of DWI and careless driving.  In a de novo trial on the record, the Law Division also convicted defendant of DWI and careless driving.  Additionally, the Law Division ruled that the municipal prosecutor was not required to provide in discovery the names of the neighboring police officers or the videotapes requested.  The Appellate Division affirmed the motor-vehicle convictions and the Law Division's discovery rulings.

We affirm in part and reverse in part.  First, in accordance with Rule 7:7-7(b), the municipal prosecutor was required to provide defendant with the names of the police officers from the adjacent jurisdiction who were present at the

2

DWI accident scene.  Defendant, however, did not seek relief from the court pursuant to Rule 7:7-7(j).  Here, the discovery issue was never truly placed before the municipal court.  The court could not grant relief on an issue of which it was unaware.  Defendant cannot raise the purported discovery violation for the first time on appeal and therefore the issue is waived.

Second, pursuant to Rule 7:7-7(b), the municipal prosecutor was required to provide the requested videotapes that may have recorded defendant's appearance, behavior, and motor skills.  Such information, if available, was clearly relevant to a DWI defense.  We cannot determine from the record whether any such videotape ever existed or existed at the time of defendant's discovery request.  Therefore, we remand to the Law Division to conduct a hearing to address that issue.  If any relevant video recordings were withheld -- and we do not suggest any were -- the Law Division has wide latitude to fashion an appropriate remedy pursuant to Rule 7:7-7(j).

I.

At the conclusion of a trial in the Wayne Township Municipal Court, defendant was found guilty of DWI, N.J.S.A. 39:4-50, and careless driving, N.J.S.A. 39:4-97.  The court sentenced defendant as a third-time DWI offender to 180 days in the county jail.  It also imposed a ten-year license suspension

3

and applicable fines and fees and mandated that defendant install an ignition-interlock device for one year after completing his license suspension. The court merged the careless driving conviction into the DWI conviction.

The relevant facts come from the testimony adduced at the municipal court proceedings, which were held on December 2, 2009, May 12, 2010, and August 13, 2010.[1]

A.

On the evening of November 15, 2008, while dining at a restaurant with his girlfriend, defendant consumed a number of beers. After dinner, defendant drove a 2008 Nissan Altima in which his girlfriend was a passenger. While traveling on Route 23 in Wayne Township in the rain, the Nissan slid from the middle lane into the far left lane, crashing into the rear of a 2006 Audi A4 stopped at a light. The air bags in the Nissan deployed. Defendant testified that the air bag hit him square in the face, stunning him and causing particles released from the air bag to get in his eyes. Although his face was scratched, defendant did not suffer any major injuries.

A police officer from the neighboring township of Pequannock arrived on the scene immediately following the accident, and other Pequannock police officers arrived

_____

[1] For the most part, the operation of the breathalyzer is not an issue in this appeal.

4

afterwards.  The testimony of the driver and passenger of the Audi differed on when the Wayne Township officers arrived at the crash site, one saying they appeared twenty minutes following the accident and the other saying they appeared in just seconds.  Defendant believed that Wayne Township officers arrived two to three minutes after the accident.  No one disputes that Wayne Township officers relieved the Pequannock Township officers.

Two Wayne Township police officers who responded to the accident, Sergeant (then-Officer) Andrew Verdon and Officer Alexander DeLuccia, gave substantially similar accounts at trial.  The officers, collectively, observed that defendant's eyes were bloodshot and watery, his speech was slurred, his breath smelled of alcohol, and he was swaying and grasping for support.  One of the officers drove defendant to a nearby empty parking lot, where defendant was asked to perform several field sobriety tests -- the walk and turn, the one-leg stand, and the horizontal gaze nystagmus.[2]  According to the officers, the parking lot was well lit and evenly paved, and rain was not falling.  Both officers stated that defendant failed the three tests and was then arrested for DWI.  In contrast, defendant

---

[2] According to the Sergeant Verdon, the horizontal gaze nystagmus requires a suspected DWI driver to follow the tip of a pen with each eye.  If the suspect is unable to smoothly do so, that is one indicator that the suspect may be intoxicated.  See State v. Doriguzzi, 334 N.J. Super. 530, 536 (App. Div. 2000).

testified that the parking lot was not well lit and that the pavement was wet from rain, which was still falling. Defendant claimed that he was suffering the effects of the automobile crash and the deployment of the air bags while performing the sobriety tests.

Defendant was transported to Wayne police headquarters, where the officers attempted to test his blood alcohol content with an Alcotest. Because the machine malfunctioned, defendant was then taken to a nearby State Police barracks. There, Officer DeLuccia administered a Breathalyzer test to defendant, who gave two breath samples. The two test results indicated that defendant had a blood alcohol concentration of 0.17 and 0.18 percent. See N.J.S.A. 39:4-50(a) (stating that "a person who . . . operates a motor vehicle with a blood alcohol concentration of 0.08% or more by weight of alcohol in the defendant's blood" is guilty of DWI). Officer DeLuccia testified that no radios or cell phones were in the room while the Breathalyzer was in use.[3]

In his testimony, defendant claimed that Sergeant Verdon told him to advise his lawyer "to pull the videotape because we were wearing the radios the whole time and we never took your

_____

[3] Under certain conditions, radio frequency interference may cause an erroneous Breathalyzer reading. Romano v. Kimmelman, 96 N.J. 66, 82-84 (1984).

6

cell phone away." Defendant called to the stand Dr. Richard Saferstein, who was qualified as an expert witness. Dr. Saferstein offered his opinion that a driver who suffers trauma in an automobile crash in which air bags deploy may have difficulty performing psychomotor physical tests. He also testified that defendant should have been asked to perform the psychomotor physical tests indoors if the parking lot surface was slippery due to the rain.

On December 9, 2010, the municipal court found defendant guilty of DWI and careless driving, crediting the State's witnesses, particularly the testimony of Sergeant Verdon and Officer DeLuccia. The court based its DWI finding on both the Breathalyzer readings and the officers' observations of defendant.

### B.

A month after defendant's arrest, defense counsel submitted to the municipal prosecutor the first of two letters requesting discovery. A December 16, 2008 discovery letter requested, pursuant to Rule 7:7-7(b), the "[n]ames and addresses of any persons whom the prosecuting attorney or any representative/agent of the State knows to have relevant evidence or information" and "video tapes, tape recordings or any other means of electronic or mechanical means of preserving evidence, which are within the possession, custody, or control

7

of the State." The letter also sought the production of any relevant video or audio recording made by a camera-equipped vehicle and any relevant 9-1-1 and dispatch recordings.

In a follow-up to a conversation with the municipal prosecutor, defense counsel requested in a January 26, 2009 letter various categories of documents that remained outstanding, including (1) the "[n]ame, badge number and rank of each police officer, as well as the unit number for each police vehicle, that responded . . . to the alleged accident"; (2) any video recordings of defendant at the scene, the Wayne Township police station, or State Police barracks, including any recordings of his performance of any psychomotor physical tests; and (3) "any video recordings of defendant while he was in the custody of or being questioned by members of the Wayne Township or Pequannock Police Department."

At a pretrial conference on January 16, 2009, defense counsel stated that, according to his client, the officers told defendant that he was being videotaped during his transport to State Police headquarters and during the Breathalyzer test. The municipal prosecutor responded that the Wayne Township patrol cars did not have videotaping capability and that the State Police reported that there was no video recording of the Breathalyzer examination. In a letter dated March 3, 2009, the

8

prosecutor further explained that the Wayne Township police and State Police did not have videotapes of defendant.

At trial, Sergeant Verdon testified that the Wayne Township Police Department had security cameras in the parking lot and hallways on the date of defendant's arrest.  In response to defense counsel's cross-examination, Officer DeLuccia indicated his belief that the State Police barracks had video cameras for security purposes, but he did not know whether they were operational.  The prosecutor cut off any further questioning on this topic, stating that "[t]here [were] no videotapes available."  Defense counsel did not press during trial for the names of the Pequannock police officers, who were present at the accident scene.

The record does not make clear whether any videotapes existed at the time defendant made his first discovery request, one month after his arrest.

C.

In a trial de novo on the record, the Superior Court, Law Division found defendant guilty of DWI based on the Breathalyzer readings and, separately, "on observational evidence alone."[4] Defendant was also found guilty of careless driving and given

---

[4] The arguments before the Law Division concerning the admissibility of the Breathalyzer results are not germane to this appeal.

9

the same sentence that was imposed in municipal court.  At the conclusion of the trial de novo, the court also addressed the discovery issues raised by the defense.  The court held that "the State [was] under no obligation to produce the tape of a suspected drunk driver performing field sobriety tests" or "a tape from the surveillance camera [at] Wayne Township Police headquarters" during the discovery process.  The court, moreover, determined that the State was not required to produce phone logs of the Wayne Township Police Department that would have assisted defendant in identifying the Pequannock police officer who first arrived on the scene.

Defendant appealed.

### D.

In an unpublished decision, the Appellate Division affirmed defendant's DWI conviction based solely on the observations of the officers and therefore found it did not have to reach issues raised by defendant related to the admissibility of the Breathalyzer results.  The appellate panel also affirmed the Law Division's discovery rulings, for the most part quoting the reasoning of the Law Division.[5]

---

[5] We will not discuss issues raised before the Appellate Division that are not pertinent to this appeal.

10

We granted defendant's petition for certification "limited to the issue of whether defendant was improperly denied discoverable information." State v. Stein, 220 N.J. 97 (2014).

## II.

### A.

Defendant argues that the State was required to provide, as part of discovery, any videotapes that recorded his appearance and other indicia of his sobriety. In short, defendant contends that any videotape that existed at the time of his discovery request had relevance to the issue of whether he was under the influence and would have had utility in testing the credibility of the police officers who testified. He also asserts that because the State uses such tapes for inculpatory purposes in DWI cases, the defense should have a right to introduce the same tapes for exculpatory purposes.

Furthermore, defendant claims that the State should have provided the names of the Pequannock Township officers who first arrived on the scene because they "could well have supported [his] case." Last, he indicates that the municipal prosecutor cannot "hide behind the fact that these officers were from a different town" because the charges were brought in the name of the State.

### B.

The State counters that this Court should not consider the

11

discovery issues because defendant did not raise or litigate the matter before the municipal court.[6]  The State maintains that "no specific discovery violation was presented to the judge," and "[a]s a result there was no decision made regarding discovery."  The State posits that defendant cannot be granted a new trial based on unsubstantiated claims of discovery violations that he did not press in the municipal court.

The State also argues that it had no duty to provide the names of the Pequannock Township police officers and any videotapes, if they did exist.  The State, moreover, contends that, even if videotapes did exist, "[g]iven the testimony and evidence there is no reasonable probability that video of defendant at the Wayne Police Department or the New Jersey State Police Barracks would have altered the judge's perspective."

### III.

#### A.

A trial court's resolution of a discovery issue is entitled to substantial deference and will not be overturned absent an abuse of discretion.  State v. Hernandez, ___ N.J. ___ (2016) (slip op. at 14).  "We need not defer, however, to a discovery order that is . . . 'based on a mistaken understanding of the

---

[6] The State did not present this argument in its Appellate Division brief on which it relied in opposing defendant's petition for certification.

12

applicable law.'"  Ibid. (quoting Pomerantz Paper Corp. v. New

Cmty. Corp., 207 N.J. 344, 371 (2011)).  In reviewing the

meaning of a court rule, "we owe no deference to the

interpretative statements of the trial court and Appellate

Division, unless they are persuasive in their reasoning."  Ibid.

(citing State ex rel. A.B., 219 N.J. 542, 554-55 (2014)).

B.

The discovery rules governing the municipal court and

Criminal Part of the Law Division are almost identical; both

mandate the disclosure of the same categories of information.

Compare R. 7:7-7, with R. 3:13-3(b).  Indeed, the municipal

court discovery rules are patterned from the criminal discovery

rules.  See Verniero & Pressler, Current N.J. Court Rules,

comment 7 on R. 7:7-7 (2016) ("This rule restates the discovery

provision of [Rule] 3:13-3.").

Broad discovery and the open-file approach apply in

criminal cases "to ensure fair and just trials."  Hernandez,

supra, __ N.J. at __ (slip op. at 1); State v. Scoles, 214 N.J.

236, 252 (2013) ("[A] defendant has a right to automatic and

broad discovery of the evidence the State has gathered in

support of its charges.").  Criminal cases and quasi-criminal

cases, such as DWI, which are tried in municipal court, share

many of the same procedural protections -- the State bears the

burden of proving guilt beyond a reasonable doubt and the

13

defendant has the right to counsel, to present and cross-examine witnesses, and not to testify, to name a few. See State v. Widmaier, 157 N.J. 475, 494-95 (1999). In light of the similarity between criminal and municipal court cases and their discovery rules, the liberal approach to discovery in criminal cases is applicable in municipal court cases.

Rule 7:7-7(b) sets forth a defendant's right to discovery in municipal court. The discovery rule states that "in all cases the defendant, on written notice to the municipal prosecutor . . . shall be provided with copies of all relevant material, including but not limited to" the information set forth in eleven discrete categories. Rule 7:7-7(b)(1)-(11).[7] Only two categories are germane to this case.

The first applicable rule states that the municipal prosecutor is required to provide the "names, addresses, and birthdates of any persons whom the prosecuting attorney knows to

---

[7] We note that the disclosure requirements of Rule 7:7-7(b)(1)-(11), which mandate the release of all evidence or information relevant to a legitimate defense, are more expansive than the due process disclosures mandated by Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) and its progeny. In Brady, the United States Supreme Court held that due process forbids the government from withholding material evidence favorable to an accused that has been requested by the defense. Id. at 87, 83 S. Ct. at 1196-97, 10 L. Ed. 2d at 218. This bears stating because, to some extent, both the State and defendant in their arguments refer to Brady as a reference point for analysis.

14

have relevant evidence or information." R. 7:7-7(b)(7). This subsection does not distinguish between relevant evidence possessed by police officers in the municipality in which the local prosecutor has jurisdiction and relevant evidence possessed by police officers from a neighboring municipality. Provided that the municipal prosecutor knows that police officers from an adjoining jurisdiction have relevant information pertaining to a DWI case, the names of those officers must be disclosed to a defendant.

The second applicable rule provides that the municipal prosecutor must provide "all relevant . . . books, originals or copies of papers and documents, or tangible objects, . . . including, but not limited to, writings, drawings, graphs, charts, photographs, video and sound recordings, [and] images." R. 7:7-7(b)(6) (emphasis added).[8] "Relevancy is the hallmark of

---

[8] The version of Rule 7:7-7(b)(6) at the time of trial, unlike the current rule, did not explicitly identify photographs and video and sound recordings as discoverable, but the disclosure of video and sound recordings was understood to be encompassed within the then-language of the rule. See State v. Mustaro, 411 N.J. Super. 91, 102 (App. Div. 2009) (holding that 2009 version of Rule 7:7-7(b)(6) required disclosure of videotape of defendant's arrest for DWI). The 2010 version of Rule 7:7-7(b)(6) required disclosure of "books, originals or copies of papers and documents, or tangible objects, buildings or places that are within the possession, custody or control of the government." No one disputes that, at the time of the proceedings in this case, the scope of Rule 7.7-7(b)(6) encompassed photographs and video and sound recordings.

15

admissibility of evidence." State v. Darby, 174 N.J. 509, 519 (2002).  Evidence is relevant if it "ha[s] a tendency in reason to prove or disprove any fact of consequence to the determination of the action."  N.J.R.E. 401.[9]

Just as testimony regarding a DWI suspect's failure to perform psychomotor physical or sobriety tests, or walk and stand without stumbling and grasping for support, or talk without slurring his speech is relevant evidence to prove intoxication, likewise is a video or sound recording that would depict the very same things.  The adage that a picture is worth a thousand words is an apt expression of the value and importance of video and sound recordings, if they are available in DWI cases.  Indeed, a video recording of events in many cases may be equal or superior to testimonial evidence.  Clearly, if such evidence is relevant to proving guilt, then the converse must hold true.  Evidence that would have a tendency in reason to disprove a DWI defendant's intoxication is relevant and therefore must be disclosed to a defendant, if such evidence is in the State's custody or control.

---

[9] Nothing in N.J.R.E. 401 suggests that the definition of relevance is different for quasi-criminal cases, such as DWI, than for actual criminal cases.  To the extent that the Appellate Division intimated otherwise in State v. Carrero, 428 N.J. Super. 495, 507-08 (App. Div. 2012), and State v. Ford, 240 N.J. Super. 44, 48-49 (App. Div. 1990), we reject that notion.

16

Discovery in a municipal court case, like in a criminal case, "'is appropriate if it will lead to relevant' information." Hernandez, supra, __ N.J. at __ (slip op. at 15) (quoting State v. Ballard, 331 N.J. Super. 529, 538 (App. Div. 2000)). In the same vein, the discovery rule requires that the State provide defendant with "'material evidence affecting [the] credibility' of a State's witness whose testimony may be determinative of guilt or innocence." Id. at __ (slip op. at 16) (quoting State v. Carter, 69 N.J. 420, 433 (1976)).

The recordings from a patrol car's dashboard camera that depict the interactions between a DWI suspect and police officers or the sobriety tests performed by the suspect are clearly relevant, and if the recordings contradict an officer's testimony, such evidence has vital impeachment value to the defense. A video recording of a Breathalyzer test or a defendant's appearance, behavior, and motor skills at police headquarters is also relevant because it may have "a tendency in reason to prove or disprove" that the defendant was under the influence. See N.J.R.E. 401. To ensure the availability of such relevant evidence, a defendant should give written notice to the municipal prosecutor to preserve pertinent videotapes pursuant to Rule 7:7-7. Although the defense carries this obligation, the State also has a duty to preserve evidence that it knows is relevant to a DWI prosecution.

17

The State may move for the redaction of a video recording, and an in camera review if necessary, under appropriate circumstances.  If the State can show that a video recording (1) discloses features or the outlay of headquarters that is likely to compromise security, (2) captures people not relevant to the proceedings and whose privacy rights may be infringed, or (3) is necessary for another justifiable reason, the court may order redaction consistent with the fair-trial rights of the defendant.

We now apply those simple, straightforward principles to the facts of this case.

IV.

A.

The municipal prosecutor had the discovery obligation to provide defendant with the names of the Pequannock police officers present at the scene of the motor vehicle accident in this case.  See R. 7:7-7(b)(7) (requiring municipal prosecutor to disclose "names . . . of any persons whom [he or she] knows to have relevant evidence or information").  Defense counsel made the appropriate request in his first and second discovery letters, seeking the names of "any persons whom the prosecuting attorney . . . knows to have relevant evidence or information" (first letter) and the "[n]ame, badge number and rank of each police officer, as well as the unit number for each police

18

vehicle, that responded . . . to the alleged accident" (second letter). The second letter specifically referenced the Pequannock Police Department by requesting any relevant video recordings made by its officers.

Common sense tells us that the first responding police officers at the scene of an accident caused by a driver suspected of DWI will have evidence or information relevant to the case. The officers may know whether the suspect exhibited injuries resulting from the accident, whether he smelled of alcohol, whether his speech was slurred, whether he made admissions, or whether his balance was impaired, to name a few observations that would be of relevance.

We reject any suggestion in the decisions of the Law Division and Appellate Division that, as a matter of discovery, defendant did not have a right to the names of the Pequannock police officers or, to the extent that those names were not readily known, to evidence, such as phone logs, that would have revealed their names.

Having said that, although defendant made the request for the names of those officers in his discovery letters, at no time during the municipal court hearings did he seek in a meaningful

19

way to compel the municipal prosecutor to comply with the State's disclosure obligation.[10]  Rule 7:7-7(j) provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule . . . , the court may order that party to provide the discovery of materials not previously disclosed, . . . or enter such other order as it deems appropriate.

Defendant did not seek to avail himself of the enforcement mechanism of Rule 7:7-7(j).  Defendant never brought before the municipal court his demand for the names of the Pequannock police officers.  Defendant may not remain silent on a discovery violation known to him in municipal court and strategically calculate that he can bring it to life in a trial de novo before the Law Division.

---

[10] In his mid-trial, municipal court motion brief, under a point heading entitled, "THE FAILURE OF THE POLICE TO PRESERVE EVIDENCE . . . ," defendant mostly focuses on his contention that the municipal prosecutor failed to preserve videotape evidence.  Under that same point heading, however, defendant mentions that one of the Pequannock police officers may have witnessed the accident and therefore may have knowledge "whether the accident actually happened in Wayne Township or Pequannock." For that reason, defendant states that the identity of the officer is important.  But nowhere in the transcripts of the municipal court proceedings does defendant ask the court to order the municipal court prosecutor to disclose the names of the Pequannock officers.  Nor does defendant ever question that the Wayne Township municipal court had jurisdiction to hear the DWI case.  The precise location of the accident was known, and no challenge was raised concerning the municipality that had jurisdiction over the case.

In sum, although the Law Division and Appellate Division erred in suggesting that the municipal prosecutor could withhold from defendant the names of relevant witnesses or the means of identifying them, defendant did not raise or preserve the issue in the municipal court proceedings.  See N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010) (noting that "issues not raised below will ordinarily not be considered on appeal"); see also Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 539 (App. Div. 2009) (noting that because discovery issue was not presented to trial court, that issue would not be considered on appeal), certif. denied, 203 N.J. 93 (2010).  We therefore decline to grant defendant a remedy that he did not seek at the appropriate time in the appropriate forum.

B.

In his two discovery letters, defendant requested "video tapes . . . which are within the possession, custody, or control of the State"; any recordings made by a video-equipped police vehicle at the accident scene; any recordings by cameras at the Wayne Township police headquarters or State Police barracks depicting defendant, his arrest, or his performance of psychomotor physical tests; and any video recording made by officers of the Pequannock Police Department.  The discovery requests unquestionably sought relevant evidence that must be

21

disclosed pursuant to Rule 7:7-7(b)(6) -- provided, of course, that such video recordings existed at the time defendant sought the information. At the time of the municipal court proceedings, any such videotape in the State's possession was a "tangible object[]," which, if it contained relevant evidence or information, had to be disclosed to defendant. R. 7:7-7(b)(6) (2010) (governing discovery rule at time of proceedings in this case); see also Mustaro, supra, 411 N.J. Super. at 102.

We reject the Law Division's determination, affirmed by the Appellate Division, that the State did not have a discovery "obligation to produce the tape of a suspected drunk driver performing field sobriety tests" or "a tape from the surveillance camera [at] Wayne Township Police headquarters," or a tape from any other police department that depicted defendant's appearance, behavior, and motor skills, or other evidence or information relevant to the case. As discussed, such tapes may have value in the prosecution and defense of a DWI case. In this case, any video recording was relevant if it had a tendency in reason to show defendant's sobriety or impeach the officers' accounts that supported the conclusion that defendant was under the influence.

We cannot conclude with any certainty from the record that the video recordings sought by defendant never existed or did not exist at the time he made his discovery requests. The

22

municipal prosecutor at the January 16, 2009 pretrial conference stated that the Wayne Township patrol cars did not have videotaping capability, but he did not provide information concerning whether the Pequannock Township patrol cars possessed such a capability.  Although the municipal prosecutor explained in a March 3, 2009 letter that the Wayne Township Police and State Police did not have videotapes of defendant, the trial testimony of Sergeant Verdon and Officer DeLuccia raised some questions about the operability of cameras in the Wayne Township Police Department and State Police barracks.  Moreover, the municipal prosecutor did not state that videotapes never existed or did not exist at the time of defendant's discovery requests. Additionally, in the trial de novo before the Law Division, the prosecutor did not argue that the videotapes requested in discovery never existed, but rather that the State had no obligation to produce them.

Surely, defense counsel could have made a better record or pressed with greater clarity the relief that he sought before the municipal court.  The failure to do so is partly responsible for the confused record.  We find no fault in the way the municipal court handled the proceedings.

Nevertheless, out of an abundance of caution, we remand to the Law Division for proceedings to determine whether any relevant video recordings ever existed or were available at the

time that defendant made his discovery requests.  See R. 3:23-8(a)(2) ("[T]he court may permit the record to be supplemented for the limited purpose of correcting a legal error in the proceedings below.").  We do not suggest that any discovery violation occurred.  If any relevant video recordings were withheld, the Law Division has wide latitude to fashion an appropriate remedy pursuant to Rule 7:7-7(j).

## V.

Accordingly, we affirm in part and reverse in part the judgment of the Appellate Division, and remand to the Law Division to conduct proceedings consistent with this opinion. We do not retain jurisdiction.


CHIEF JUSTICE RABNER; and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON and JUDGE CUFF (temporarily assigned), join in JUSTICE ALBIN's opinion.

24