NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5640-13T4

PATRICIA GILLERAN,

     Plaintiff-Respondent,

v.

THE TOWNSHIP OF BLOOMFIELD
and LOUISE M. PALAGANO, in
her capacity as Records Custodian
for the Township of Bloomfield,

     Defendants-Appellants.

_____

**APPROVED FOR PUBLICATION**

**May 13, 2015**

**APPELLATE DIVISION**

Argued February 25, 2015 — Decided May 13, 2015

Before Judges Ashrafi, Kennedy, and
O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No.
L-3459-14.

Steven J. Martino, Assistant Director of
Law, argued the cause for appellants (Law
Department, Township of Bloomfield,
attorneys; Mr. Martino, on the brief).

Candida J. Griffin argued the cause for
respondent (Pashman Stein, attorneys; Ms.
Griffin, of counsel and on the brief).

Stuart A. Youngs argued the cause for amicus
curiae American Civil Liberties Union of New
Jersey (Riker Danzig Scherer Hyland &
Perretti, L.L.P., attorneys, Lance J. Kalik,
of counsel; Mr. Young, on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

The Township of Bloomfield and its Records Custodian appeal by our leave from an order of the Law Division finding that they violated New Jersey's Open Public Records Act, N.J.S.A. 47:1A-1 to -13 (OPRA). The order requires that they disclose to plaintiff Patricia Gilleran security video recordings from a stationary camera located on the back of Bloomfield's municipal building ("Town Hall"). We affirm.

On April 7, 2014, Gilleran made a written OPRA request for video recordings from the designated security camera for a five-day period. The camera is focused on the Mayor's parking space and also on the rear door of Town Hall. Gilleran explained that she was looking for video recordings of a specific person entering or leaving the building. After further discussion with a municipal official, Gilleran voluntarily reduced her request to one day of recordings, March 31, 2014, from 7:00 a.m. to 9:00 p.m. She said she would provide a hard drive to copy the recordings in native format.

On April 11, 2014, Bloomfield denied Gilleran's request, citing N.J.S.A. 47:1A-1.1. It claimed the recordings were not government records subject to disclosure under OPRA because they are confidential "emergency or security information or

procedures for any buildings or facility which, if disclosed, would jeopardize security of the building or facility or persons therein . . . ."  Ibid.

On May 14, 2014, Gilleran filed a verified complaint in the Superior Court, Law Division, and obtained an order to show cause.  In her submissions to the court, Gilleran claimed the recordings will reveal "high-level Democratic officials and other politicians visiting the Municipal Building on an almost daily basis and having an influence upon the Town Administrators."  In response, Bloomfield submitted a certification of the Township Administrator, Ted Ehrenburg.  After its introductory paragraphs, the certification stated in its entirety:

> 3.  . . . The camera from which the video was requested is located on the rear of Town Hall on the second story.  Without revealing security information, the camera provides security for Town Hall and/or the Law Enforcement Building adjacent to Town Hall.
>
> 4.  The cameras are strategically placed and smoked glass is placed over the cameras so that the public does not know the area that is being surveilled.
>
> 5.  Allowing access by the public to the video surveillance would defeat the entire purpose of having security cameras on Town Hall.
>
> 6.  Again, without revealing security information, the area which is potentially surveilled is not only used by public employees but Police Officers who report to

and from work, confidential informants who are brought into the Police Station, witnesses who are brought into the Police Station, domestic violence victims who are brought into the Police Station and members of the public who seek to report crimes.

7. If the public is given access to the video tapes, the safety of these individuals could be put in jeopardy.

8. Therefore, video surveillance which is essential to the security of the township buildings should not be provided to the public.

At oral argument before the Law Division, Bloomfield repeated the Administrator's averments but also conceded that township officials had not viewed the fourteen hours of requested recordings and did not know specifically what they contained. Nevertheless, Bloomfield argued in the abstract that the recordings may show an undercover officer, witness, or victim walking into the police station adjacent to Town Hall. It also argued that the statutory language of OPRA exempts the recordings from disclosure because they captured "security measures and surveillance techniques . . . ." N.J.S.A. 47:1A-1.1. From a policy and practicality standpoint, Bloomfield claimed that "granting the application would create absolute havoc in the State" and surmised that the township would have to hire additional staff solely to respond to such OPRA requests in the future.

Gilleran responded with judicial decisions favoring broad disclosure of government records to the public. She argued that OPRA favors nearly "unfettered" access, see Courier News v. Hunterdon Cnty. Prosecutor's Office, 358 N.J. Super. 373, 383 (App. Div. 2003), and emphasized that she could have stood outside Town Hall on March 31, 2014, and observed everything captured by the security camera that Bloomfield now claims is confidential. She further argued that the existence and observational direction of the camera are obvious to any member of the public who chooses to look at its location.

The court held that OPRA did not provide a blanket exemption from public disclosure for the contents of security camera recordings. It concluded that Bloomfield did not meet its burden of proving under the pertinent statutes that security-related exemptions applied in the circumstances of this case. The court reasoned:

> [T]he camera is in plain sight. It is clear what the general focus of that camera is. There's nothing hidden about it and in that respect, knowing that there was a — camera pointing at the Mayor's parking space and the back door does nothing to jeopardize the security of the building itself.
>
> Without looking at the tape, there is absolutely no way to say that it would create a risk to the safety of persons, property, electronic data, or software.

The court's order of June 25, 2014, found Bloomfield and its Records Custodian in violation of OPRA, ordered them to disclose the requested fourteen hours of recordings within five days, and found Gilleran to be the prevailing party under N.J.S.A. 47:1A-6, thus entitling her to recover reasonable attorney's fees from Bloomfield for litigating her OPRA claim. Subsequently, the court denied Bloomfield's application for a stay of the order, although it extended the time within which the recordings were to be disclosed.

On July 2, 2014, we granted Bloomfield leave to appeal and a stay. On a later date, we granted the application of the American Civil Liberties Union of New Jersey (ACLU) to file a brief and to argue as amicus curiae on the appeal.

OPRA mandates that "all government records shall be subject to public access unless exempt . . . ." N.J.S.A. 47:1A-1. OPRA's purpose is "to maximize public knowledge about public affairs in order to ensure an informed citizenry . . . ." Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004)).

The Legislature explicitly declared in the opening words of OPRA its intent favoring disclosure:

> The Legislature finds and declares it to be the public policy of this State that:

government records shall be readily
accessible for inspection, copying, or
examination by the citizens of this State,
with certain exceptions, for the protection
of the public interest, and any limitations
on the right of access accorded by [OPRA]
shall be construed in favor of the public's
right of access . . . .

[N.J.S.A. 47:1A-1.]

The statute broadly defines "government record" to include all documents and similar materials, and all information and data, including electronically stored data, that have been made or received by government in its official business. N.J.S.A. 47:1A-1.1. From this broad definition, the statute excepts "inter-agency or intra-agency advisory, consultative, or deliberative material" and also lists descriptive categories of information that are expressly excluded from the meaning of "government record." Ibid.[1] As further expansion of the public's right of access, OPRA places the burden of proof on the government agency to show that a requested record may be withheld under an exception or exclusion from the disclosure requirement. N.J.S.A. 47:1A-6.

---

[1] Two other sections of OPRA also contain exclusions from the disclosure requirement: N.J.S.A. 47:1A-3 pertaining to records of investigations in progress and N.J.S.A. 47:1A-10 pertaining to personnel and pension records.

Bloomfield does not dispute that the requested video recordings fit within the general definition of government record and that Bloomfield bears the burden of proving they are exempt from disclosure. It relies on the following two definitional exclusions of N.J.S.A. 47:1A-1.1:

> emergency or security information or procedures for any buildings or facility which, if disclosed, would jeopardize security of the building or facility or persons therein;
>
> security measures and surveillance techniques which, if disclosed, would create a risk to the safety of persons, property, electronic data or software . . . .

Bloomfield claims for the reasons stated in Administrator Ehrenburg's certification that disclosure of the security recordings would jeopardize confidential police activity and also the privacy of victims of crime, witnesses, and others who may have business in the police building. In addition, Bloomfield argues disclosure would jeopardize the security measures it has taken for Town Hall and its adjacent parking area and police building.

Gilleran and the ACLU respond that these contentions would generally apply to any security or surveillance recordings kept by a government agency and, if accepted as the law, would eviscerate the Legislative purpose of granting the public broad access to such government records. They argue against a

"blanket" exemption of security recordings and insist that Bloomfield was required to review the requested recordings and to show specifically in the circumstances of this case that disclosure would jeopardize the security of the building or risk the safety of persons or property. Citing N.J.S.A. 47:1A-5(g),[2] Gilleran and the ACLU also argue that, had Bloomfield watched the video recordings and concluded they actually contained confidential security or surveillance information, it would have been required to redact that specific information and release the rest of the recordings.

Our standard of review is plenary with respect to interpretation of OPRA and its exclusions. Asbury Park Press v. Cnty. of Monmouth, 406 N.J. Super. 1, 6 (App. Div. 2009), aff'd, 201 N.J. 5 (2010); MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 543 (App. Div. 2005).

To avoid the requested disclosure, there must be a "clear showing" that one of OPRA's exclusions applies. Tractenberg v.

---

[2] N.J.S.A. 47:1A-5(g) states in relevant part:

> If the custodian of a government record asserts that part of a particular record is exempt from public access pursuant to [OPRA], the custodian shall delete or excise from a copy of the record that portion which the custodian asserts is exempt from access and shall promptly permit access to the remainder of the record.

<u>Twp. of W. Orange</u>, 416 <u>N.J. Super.</u> 354, 378-79 (App. Div. 2010) (quoting <u>Ocean Cnty. Prosecutor's Office</u>, <u>supra</u>, 374 <u>N.J. Super.</u> at 329). A government agency "seeking to restrict the public's right of access to government records must produce specific reliable evidence sufficient to meet a statutorily recognized basis for confidentiality." <u>Courier News</u>, <u>supra</u>, 358 <u>N.J. Super.</u> at 382-83. "Courts will 'simply no longer accept conclusory and generalized allegations of exemptions . . . .'" <u>Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth.</u>, 423 <u>N.J. Super.</u> 140, 162 (App. Div. 2011) (quoting <u>Loigman v. Kimmelman</u>, 102 <u>N.J.</u> 98, 110 (1986)).

Bloomfield contends "the video camera is part of an overall security system installed on Town Hall" which "in and of itself" is sufficient to deny access. We reject that contention. As argued by Gilleran and the ACLU, the "if disclosed" clauses of the two statutory exemptions we quoted previously, <u>N.J.S.A.</u> 47:1A-1.1, would be superfluous if the statute was intended to provide a blanket exemption for all security information, procedures, measures, and techniques. The trial court held correctly that the statutory exclusions do not provide a blanket OPRA exemption for recordings made from security cameras.

With respect to the particular camera in this case and information contained on its recordings, Administrator

Ehrenburg's certification was not sufficiently specific to establish a risk to the safety of any person or property or jeopardy to the security measures taken for the building. Bloomfield provided no specific information from police officials stating that the identity of informants, crime victims, or confidential witnesses would in fact be revealed and specifying what kinds of activities occurred outside the police station during the period of recordings that Gilleran requested. It provided no information by the persons responsible for installing or operating the security camera to indicate that important security strategies or techniques would be disclosed. For example, there was no indication that the security camera might have blind spots in its apparent surveillance area, or that the clarity and sharpness of the imagery recorded would be revealed in a way that might compromise the strategic deterrent effect of the security camera or overall security system of the building. The Administrator's "conclusory and general allegations of exemptions," see Newark Morning Ledger, supra, 423 N.J. Super. at 162, were insufficient to justify withholding the recordings from disclosure.

We do not decide here that information such as in our examples would be sufficient to qualify the recordings as excluded from disclosure. Such a decision must be made in the

11

appropriate case evaluating the specific facts and legal arguments presented.  We only decide that the information contained in the Administrator's certification was insufficient to avoid disclosure.

Because we are affirming the trial court's decision, we need not decide whether N.J.S.A. 47:1A-5(g) imposes an obligation on a government agency to review requested video recordings in their entirety and to withhold only those parts that actually contain exempt information.  We view as impractical the position taken by Gilleran and the ACLU that OPRA required Bloomfield to review the entire fourteen hours of recordings and to specify particular footage that contained confidential material.  Such a requirement may not only be unreasonably burdensome, it seems virtually impossible to accomplish without devoting the time and services of multiple employees.

The Legislature could not have contemplated that the OPRA disclosure requirement would engage the services of government employees to view video recordings from stationary surveillance cameras for hours upon hours to determine whether they contain confidential or exempt material.  Moreover, it would take more than a single government employee to review the fourteen hours of recordings because the employee would have to know what to

look for in the recordings.  It seems unlikely that a single Bloomfield employee would know the identities of all potential police informants, confidential witnesses in police investigations, or victims of crime and domestic violence, who were at risk if their identities were revealed.

On the other hand, the potential for disclosure of security measures and techniques, such as the location of blind spots or the precision and clarity of the recordings, might be information available to a knowledgeable municipal employee or to the contractor who designed and installed the security system.  Without revealing specifics about the weaknesses of the system, a person familiar with it might be able to explain the kinds of strategic information that would be revealed, especially upon close study of the recordings over time.

Gilleran and the ACLU argue that any person taking a position in the parking lot of Town Hall could make the same observations as the subject camera recorded.  But the close study of surveillance recordings over time is different from a one-time personal observation.  That, in fact, is an important value of maintaining security recordings.

Furthermore, Gilleran's modified request for one day of recordings on this occasion could be duplicated or multiplied by similar requests for many additional days of recordings or

requests by others, including those who have less lawful objectives than Gilleran. In an age when security and surveillance camera recordings may be vital to the identification and prosecution of criminal offenders, and may provide a deterrent against planned acts of violence and other criminal conduct, we do not agree indiscriminately with Gilleran's and the ACLU's argument that the public has an "unfettered" right of access to security camera recordings with the exception of precise and very limited redactions.

Reviewing a video recording is different from perusing a document for purposes of redacting exempt information and disclosing the rest in accordance with N.J.S.A. 47:1A-5(g), but that issue may have to be addressed on a case-by-case basis, depending on the length of the recordings requested and the nature of the information they may contain.[3]

We limit our conclusion to the specific case record presented in this appeal. We do not hold that security camera recordings must necessarily be disclosed unless government officials view them in their entirety and isolate specific

---

[3] The recent movement to supply police officers with body-mounted cameras may produce its own issues of disclosure to the general public under OPRA. We are not faced in this case with addressing any personal privacy issues regarding police activity and contacts with the public that might warrant a closer evaluation of public access to police recordings.

footage that meets the requirements of the two exclusions upon which Bloomfield relies. We only hold that Bloomfield did not satisfy its burden of proving the requested recordings are exempt from disclosure through the general statements of its Administrator and its argument for a blanket exemption.

Bloomfield contends in the alternative that Gilleran's request was not sufficiently particular and the records sought were not readily identifiable. See Bent v. Twp. of Stafford Police Dept., Custodian of Records, 381 N.J. Super. 30, 37 (App. Div. 2005); MAG, supra, 375 N.J. Super. at 549. We reject this argument without discussion. R. 2:11-3(e)(1)(E). Gilleran's request was for the recordings from a specific camera during a designated time-frame on a single date.

Affirmed and remanded for further proceedings as to plaintiff's entitlement to reasonable attorney's fees pursuant to N.J.S.A. 47:1A-6. The Law Division may in its discretion lift the stay entered by this court upon an application and sufficient time for response. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION